JULIAN RILEY, RESPONDENT, v. SALT LAKE RAPID TRANSIT COMPANY, a CORPORATION, APPELLANT.[1]

1. ELECTRIC STREET CAR COMPANY.—ACTION FOR DEATH OF CHILD. —NEGLIGENCE.—SUFFICIENCY OF EVIDENCE TO SUPPORT FINDING OF JURY.—In an action against an electric street car company for the death of plaintiff's minor son, evidence that the car was running somewhere between 11.96 miles and 17 miles per hour, supports the finding that defendant was negligent in running a car at a greater rate than 12 miles per hour, to which it was limited by city ordinance.

2. ID.—ID.—ID.—CONFLICT OF EVIDENCE.—MATTER FOR JURY.— There was a conflict of evidence as to whether the gong on the car was sounded before crossing the street on which the boy was struck and as to what occurred at the time he was struck and before the car passed over him. He was carried in front of the car or the wheels some 50 feet, and there was evidence that the car running at full speed could be

[1] Both parties filed petitions for a rehearing, which were denied Aug. 31, 1894. King, J., dissented from the order denying a rehearing to respondent. Appealed to the supreme court of the United States September 27, 1894.

stopped in 35 feet; that when the motorman first saw him he was 25 feet in front of the car, and that when the car stopped it had passed over his body. *Held*, that there being a substantial conflict in the evidence, the jury was justified in finding that the defendant was guilty of negligence in the premises, and that the evidence supports the finding of the jury that the car was either running at an extraordinary rate of speed and required a much greater space in which to stop it, or else no effort was made to stop it.

3. ID.—ID.—ID.—CONTRIBUTORY NEGLIGENCE.—There was evidence that the boy, who was 7 years old, was playing in the street behind a wagon; that he either came on the track from behind the wagon or walked on the track from some point near the wagon; and that he was standing on the track some 65 feet in front of the car where he might have been seen by the motorman and where he might have seen the car if his attention had been called to it. There was no evidence as to whether the child was familiar with the car or knew anything of the danger to himself from his being on or near the track. *Held*, that the boy was not guilty of contributory negligence.

4. ID.—ID.—ID.—NEGLIGENCE OF PARENTS.—It is not negligence *per se* for parents to permit a child 7 years old to go upon the public streets unattended.

5. ID.—ID.—ID.— CROSS-EXAMINATION. — HARMLESS ERROR. — The motorman testified for defendant that the car was going 11.96 miles per hour at the time of the accident; that he could not have stopped it if it had been going less than 12 miles per hour; and that when he first saw the boy he was "letting go" of the wagon 20 or 25 feet in front of the car and 6 or 8 feet to one side. *Held*, that it was not error to permit him to testify on cross-examination that if he thought his car had been 30, 40, 50 or 100 feet further back behind the time that it was on, the boy would have gotten across the track.

6. ID.—ID.—ID.—ID.—The conductor of the car testified that he did not know how far in front of the car the boy was when discovered, but when he first saw him he was from 4 to 6 feet ahead of it, and before he saw him the motorman called to the boy to "look out," or something to that effect. *Held*, that it was proper to permit him to state on cross-examination

that he thought the car was from 10 to 15 feet from the boy when the motorman called to him.

7. ID.—ID.—ID.—CHARGE TO JURY.—Where the testimony tended to show that the street was built up in the vicinity where the accident occurred, the assumption of the court in its instruction that the accident occurred in a thickly settled portion of the city, was not misleading.

8. ID.—ID.—ID.—NEGLIGENCE PER SE.—In the absence of evidence to explain the excessive speed of the car at the time of the accident, it was not error to charge that the running of the car at a rate of speed forbidden by the city ordinance was negligence *per se.*

9. ID.—ID.—ID.—EXCESSIVE DAMAGES.—The verdict for $5,000 for the death of plaintiff's 7-year-old son is excessive to the amount of $2,000.

10. UNANIMITY OF VERDICT.—The statute authorizing a verdict by less than 12 men is valid.

(No. 509. Decided July 27, 1894. 37 P. R. 681.)

APPEAL from the District Court of the Third Judicial District. Hon. Chas. S. Zane, *Judge.*

Action by Julian Riley against the Salt Lake Rapid Transit Company to recover damages for the death of plaintiff's minor son, caused by defendant's negligence. From a judgment for $5,000 entered on the verdict of the jury in favor of the plaintiff, defendant appeals. *Reversed,* unless plaintiff remits $2,000 of the judgment.

*Messrs. Bennett, Marshall & Bradley,* for appellant.

The estimate of non-expert witnesses of the rate of speed of moving cars is very unsatisfactory proof and should be received with great caution. Peterson, Ry. Accident Law, 424–5; *Hoppe* v. *Ry. Co.,* 61 Wis. 357; *Ry. Co.* v. *Huntley,* 58 Mich. 539; *Tully* v. *Ry.,* 134

Mass. 499. Some witnesses busy at work did not hear the gong rung. The motorman and conductor and two other disinterested witnesses heard the ring. The positive testimony is of greater weight. "The observation of the fact by some is entirely consistent with the failure of others to observe it or their forgetfulness of its occurrence." *Horn's Adm'x* v. *Ry. Co.,* 6 U. S. Ap. 387; *Stitt* v. *Huidekopers,* 17 Wall. 393; *Ry. Co.* v. *Elliott,* 28 Ohio St. 340.

. If a boy 7 years old has not sufficient discretion to protect himself from danger, then it was the duty of the father or his agents entrusted with the control of the child to prevent his exposure to ordinary perils, and such negligence on the part of the father precludes a recovery by him, although if the child were alive and suing, it might not be attributed to him. Tiffany on Death by Wrongful Act, §§ 69–70; *Ry. Co.* v. *State,* 30 Md. 47; *Hurst* v. *Ry. Co.,* 84 Mich. 539; *Ry. Co.* v. *Wilcox,* 138 Ill. 370; *Ry. Co.* v. *James,* 81 Pa. St. 194; *Williams* v. *Ry. Co.,* 60 Tex. 205. The statute, Session Laws 1892, page 46, amending § 3371, Comp. Laws 1888, which provides that nine of a jury may render a verdict, is in conflict with Article Seven of the amendments to the constitution of the United States. *Webster* v. *Reid,* 11 How. 437; *Callan* v. *Wilson,* 127 U. S. 540; *Spies* v. *Illinois,* 123 U. S. 169; *Hopt* v. *Utah,* 120 U. S. 430; *Haines* v. *Levin,* 51 Pa. St. 414; *Anderson* v. *Caldwell,* 91 Ind. 454 (46 Am. R. 616); Cooley Const. Lim. (5th ed.) 392–393; Ordronaux Const. Leg. 260–261; 41 N. H. 551; *Cruger* v. *Ry. Co.,* 12 N. Y. 198; *Kleinschmidt* v. *Dunphy,* 1 Mont. 131; *Copp* v. *Henniker,* 20 Am. R. 196, (55 N. H. 179); *Bradford* v. *Territory,* 34 Pac. R. 68; *State* v. *McClear,* 11 Nev. 60; 3 Blackstone's Com. 377; 2 Hare Const. Law, 753; Miller on Const. 664; *Mo.* v. *Lewis,* 101 U. S. 22–31. "It is generally held that in order to warrant a finding that negligence * * * is the proximate cause of an

injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Scheffer* v. *Ry. Co.*, 105 U. S. 252; Cooley on Torts, 69; *Lewis* v. *Ry. Co.*, 54 Mich. 55, (18 Am. & Eng. Ry. Cas. 271); Bishop on Non Contract Law, § 41; 2 Wood on Railroads (2d ed.), 1438. The action of the boy, in almost literally throwing himself under the wheels of the advancing car, was a new independent cause, disconnected from the prior unlawful running of the car, intermediate between it and the accident, and self-operating in producing the injury. *Henry* v. *Ry. Co.*, 76 Mo. 288; Bishop Non Contract Law, § 42; *Scheffer* v. *Ry. Co.*, 105 U. S. 252. "A party has a right to a direct and positive instruction upon a point material to the issue and the evidence if requested in time; and if such request is refused, and the point involved therein is not covered by the general charge, or is left vague or indefinite, the judgment will be reversed." *Selleck* v. *Ry. Co.*, 58 Mich. 195; *Campbell* v. *Campbell*, 54 Wis. 98; *Sailer* v. *Barnousky*, 60 Wis. 170; *Chapman* v. *McCornick*, 86 N. Y. 482; 2 Thompson on Trials, § 2347.

*Mr. Geo. Sutherland, Mr. S. R. Thurman* and *Messrs. Brown & Henderson,* for respondent.

The court did instruct the jury that positive evidence that the bell was rung was ordinarily of more account and greater weight than negative evidence that it was not heard, and that was all that could be said as a matter of law. Black's Proof & Plead. in Acc. Cas. pp. 67–8, 36 Cal. 513, 31 Pa. St. 358. The court was correct in charging the jury that it was to take into consideration the age of the child, his experience and intelligence, his want of care, or care in the light of such age, experience and

intelligence, and that the child was only bound to use such care as a child of his age, experience and intelligence might reasonably be expected to use. 1 Shearman & Redfield on Neg. § 73, and notes; *Railroad* v. *Stout*, 17 Wall. 659; *Rwy. Co.* v. *Gladman*, 15 Wall. 401; *Ranch* v. *Lloyd*, 31 Pa. St. 358. The burden of proof was upon the defendant to establish contributory negligence unless the testimony of the plaintiff himself established it, and the question as to whether it was established or not was a question for the jury. *Reddon* v. *Rwy. Co.*, 5 Utah, 344; *Hough* v. *Rwy. Co.*, 100 U. S. 213; *Rwy. Co.* v. *Gladman*, 15 Wall. 401. If, from the evidence, different minds might honestly arrive at different conclusions, it was a case for the jury and not for the court. 2 Thomp. Trials, §§ 1663, 1665; 2 Thomp. Neg. p. 1100, § 12; *Salisbury* v. *Herchenroder*, 106 Mass. 458; *Milwaukee, etc., Ry. Co.* v. *Kellogg,* 94 U. S. 469, 474; *Hayes* v. *Ry. Co.*, 111 U. S. 241. While the authorities are conflicting, the great weight of authority is that the running of a car at a rate of speed forbidden by statute or ordinance is negligence *per se* if left without explanation or excuse. 2 Sher. & Red. on Neg. § 467; *Pa. Co.* v. *Hensley*, 78 Ind. 569; *Keim* v. *Rwy. Co.*, 90 Mo. 314, 2 S. W. Rep. 427; *Central R. R., etc.,* v. *Smith* (Ga.), 3 S. E. Rep. 397; *Kyne* v. *Wilmington, etc.* (Del.), 14 At. Rep. 922, 926; *Ry. Co.* v. *Dunn*, 78 Ill. 197, 201; *Chicago, etc., Ry. Co.* v. *Becker*, 84 Ill. 483; *Correll* v. *Ry. Co.*, 38 Ia. 120, 18 Am. Rep. 22; 1 Thomp. on Neg. p. 506, § 8; *Hoppe* v. *Ry. Co.*, 61 Wis. 35; *Ry. Co.* v. *Donovon* (Ala.), 36 Am. & Eng. R. R. Cases, 151.

SMITH, J.:

Respondent brought this action to recover damages for the death of his seven-year-old son, alleged to have been caused by the negligence of the appellant. The appeal is

from a judgment in respondent's favor, and from the order overruling the motion for a new trial. The appellant is a corporation engaged in operating a line of street railway on different streets of Salt Lake City, and, among others, a line running south on State or First East street to Fourth South street, and then turning and running east and west on the last-named street. On the 14th day of June, one of appellant's cars operated by electricity ran down State street, made the turn to the east on Fourth South street, and proceeded one block east on said street, when, at or near the intersection of Fourth South street and Second East street, the car ran over the son of the respondent, and killed him.

The appellant complains that the evidence is insufficient to justify the verdict in several particulars, but generally it may be stated that the claim is that the evidence fails to show negligence on the part of the appellant,—that it failed to show that the defendant was running its cars more than 12 miles an hour, and fails to show that the ordinary warning by ringing the gong was not given; and, second, it is claimed that the evidence is insufficient to support the verdict, for the reason that the boy killed was shown to be guilty of negligence contributing to the injury; and, third that the evidence was insufficient to support the verdict, because it appeared from the evidence that the plaintiff and his agents were negligent in permitting the boy injured to run around in the street, unattended and uncared for.

We will first discuss these three assignments, before we begin to discuss the errors of law assigned. There was evidence tending to show that the car which was being operated by the defendant company, and which caused the injury, was, at the time of the injury, running at a rate of speed somewhere between 11.96 miles per hour and 17 miles per hour. The city ordinance permitted the car to

be run not to exceed 12 miles per hour. This running in excess of this provision of the ordinance was the first matter of negligence alleged and complained of. There was certainly evidence tending to support the finding of the jury to the effect that the car was running at a greater rate of speed than that permitted by the ordinance. There was a conflict of evidence as to whether the gong upon the car was sounded before crossing Second East street, or at any time before the child was struck and killed. There was great conflict in the evidence as to just what occurred at the time the child was struck, and before the car passed over him. He was carried in front of the wheels, or in front of the car, and driven and knocked along the track, a distance of some 50 feet. There was also evidence that the car, running at full speed, could be stopped in about 35 feet. The evidence tended to show that, when the motorman first saw the boy, the boy was some 25 feet away from the car, and in front of it, and, when the car stopped, it had passed over his body entirely. With this evidence before them, we are not warranted in saying that the jury should have found that there was no negligence on the part of the railway company in the operation of its car. It certainly appears that the car was either running at an extraordinary rate of speed, and required a much greater space in which to stop it than usual, or else there was no effort made to stop it, as there should have been. It was purely a question of fact for the jury, and there was a substantial conflict in the evidence in regard to it. Under such circumstances, it was proper to submit the matter to the jury, and have them determine whether or not the defendant was guilty of negligence in the premises.

The next assignment of error is to the effect that the deceased child was guilty of negligence contributing to the injury, and that, therefore, no recovery can be had in this

case.    There was no dispute but that the child was only seven years old, was playing in the street, and was possibly holding onto the rear end of a wagon which was coming in an opposite direction to the car of the defendant, and on a road parallel to its track and by the side of it.    Either the child was behind this wagon, and came upon the track from behind the wagon after he dropped off of it, or else walked onto the track from some point near this wagon as it was passing up the street.    There is evidence tending to show that the child was standing upon the railway track some 65 feet ahead of the car, and in a position where he might have been seen by the motorman, and where he might have seen the car if his attention had been called to it.    It is a well-established rule that children are not chargeable with the same degree of care in protecting themselves as grown people, and the child in this case was only bound to use such care as a child of his age, experience, and intelligence might reasonably be expected to use for his own protection.    If this is the correct rule, there is no evidence in the case that the child was guilty of negligence at all.    He was playing upon the street, as this child or any other had a right to do, and it seems was in such position that he might have been seen by the motorman.    He was evidently not of sufficient age to understand his danger until the discovery of it would have, perhaps, frightened him to such an extent that he would have been unable to do anything for his own protection.    There is no evidence as to whether the child was familiar with the car, or knew anything of the danger to himself resulting from his being on or near the track, and there is nothing in the record to show but what the child became confused, finding himself suddenly in the presence of the car running at a high rate of speed.    The burden of showing contributory negligence is upon the defendant, unless the testimony of the plaintiff shows it.    See *Reddon* v. *Railway*

*Co.,* 5 Utah, 344, 15 Pac. 262. For a complete synopsis of the law relative to the negligence of children under such circumstances, see 1 Shear. & R. Neg. § 73, and notes.

The next assignment upon the insufficiency of the evidence is that the plaintiff or his agents in charge of the child were negligent in allowing the child upon the street. The record is entirely and absolutely silent upon the subject of the care of those intrusted with this child. There is nothing showing, or tending to show, how the child came into the street, and it seems to us that it would be going a long way to hold that it was negligence *per se* for the parents of a child seven years old to allow him to go upon the public streets. There is nothing to show that they knew anything of his being on the street. The defendant, in operating its street-car line, should operate it in such a way as to protect the lives of children and other people, who have an equal right to the use of the street; and it is guilty of culpable negligence if it fails to exercise ordinary care for the protection of such children, when they themselves, or those in charge of them, have done nothing to unnecessarily expose them to danger.

The first error of law assigned raises the question again as to whether or not a verdict by less than 12 jurors can be received and is valid. We have frequently passed upon this question, and have upheld the statute authorizing such verdicts, and therefore we will not stop to discuss it again in this opinion.

The next error of law relates to the admission of testimony. The witness McGann, introduced on behalf of the defendant, had testified to the speed of the car at the point where the accident occurred, and testified that it was 11.96 miles per hour. On cross-examination he was asked this question: "If your car had been 30 or 40 or 50 feet, or 100 feet, back further west, behind the time that it was on, you are not prepared to say but what that

boy would have got across the track, or would not have got up there on it?" To this question there was an objection by the defendant that it was irrelevant and immaterial. The court permitted it to be answered as a hypothetical question, in view of the previous testimony that had been introduced in the case, and the witness answered that " I think, if it had been that far back of where it was, that he would have gotten across." It is difficult to see how this testimony prejudiced the appellant. The witness had testified, in answer to a previous question, that he could not have stopped, if he had been running at less than 12 miles per hour, in time to have prevented the accident. He also had testified that when he first saw the boy he was just letting go of the wagon, and was 20 feet or so from the end of the car,—20 or 25 feet, —and was off to one side 6 or 8 feet. He was then asked the question above quoted, and made the answer that, if the car had been that far back of where it was, the child would have gotten across.

It may be admitted that, the answer of the witness did not tend to prove negligence on the part of the defendant; but it must be borne in mind that it was a part of the cross-examination, and would seem to have been admissible for the purpose of distinguishing his prior testimony,—for the purpose of testing the truthfulness of his former statement that the accident would have occurred anyhow, even if the car had been running at a slower rate of speed after leaving State street. See 1 Thomp. Trials, § 408. It is undoubtedly true that the negligence complained of must be the proximate cause of the injury in order to entitle the party injured to recover. In other words, if excessive speed was the negligence complained of in this case, it must be shown that the speed was excessive at the point where the accident occurred, and that the accident was due to it. It is not sufficient to show that there had

been an excess of speed at some other point, and that the car would have been in a different position at the time the child reached the track if it had been running at a legal rate of speed. In such case the negligence is too remote to entitle the party to recover. But it does not appear that this question upon cross-examination was offered for the purpose of proving prior negligence with a view to recover at all, nor did the answer tend to prove any such thing. It was offered for the purpose of showing that the statement of the witness that the car could not have been stopped, if it had been running at a legal rate of speed, in time to save the child, was not correct, and for this purpose we think it was admissible. In any event, it is not such an error as would warrant us, in view of the testimony in the case, in setting aside the verdict.

The witness Burton was asked, on cross-examination, " How far, in your judgment, do you think the car was from the boy when he hallooed?" This was objected to as incompetent. The court overruled the objection, and permitted the witness to answer, to which an exception was taken. The witness had testified that he did not know how far ahead of the car the boy was' when he was discovered, but when he first saw him he was from four to six feet ahead of the car; that before he saw him the motorman hallooed to the boy, "Look out !" or something to that effect. He was then asked the question complained of. We see no objection to this question. The witness was the conductor upon the car; knew about the speed that the car was running, and about the space it would pass over in a given period of time. He heard the motorman halloo, and, within a certain length of time after, he saw the child from four to six feet ahead of the car. Of course, he does not know whether the child had changed its position or not in the meantime. He did know approximately how far or how much the car had

changed its position, and could give a reasonably accurate opinion as to the relative positions of the child and the car at the time the motorman shouted to him. Especially is this true in view of the fact that the space of time between the time the motorman shouted and the time when he saw the child was exceedingly slight, and the distance covered by the car, even, was great. The witness answered that the child was probably from 10 to 15 feet from the car when the motorman shouted to him, showing that, although the car was running at not less than 11.96 miles per hour, it had only progressed from 6 to 9 feet during the time intervening between the shout and the time when he saw the child. We think that there was no error in admitting this testimony.

The only two remaining assignments of error that are discussed by the appellant relate to the instructions, and the first is that the court assumed that the place of the accident was in a thickly settled portion of the city, which the evidence did not show, and which was a question for the jury. It seems to us that this objection is exceedingly technical, in the light of the evidence. The testimony tended to show that the street was built up in the vicinity where the accident occurred. While there is no express statement by any witness that it is thickly settled, there are numerous statements as to the different buildings and dwellings situate on different sides of the street at the point where the accident occurred. We think that this assumption by the court that it was in a thickly-settled portion of the city, if it be treated as an assumption, could not have misled the jury.

The next instruction complained of is that the court instructed the jury that the running of the car at the rate of speed forbidden by the city ordinance was negligence *per se*. There was no attempt to explain or excuse the excessive speed of this car upon the day of the accident

and at the time of the accident. We think the true rule is as stated by Shearman & Redfield on Negligence (volume 1, § 467), that the running of trains in violation of a statute or ordinance regulating the speed of trains, if left without explanation or excuse, is conclusive proof of negligence. Where there is no attempt at explanation, it certainly could not be misleading to the jury to say to them that such excessive speed is negligence *per se,* because there is certainly no difference in the effect of this language, and language which would state to them that this proof constituted conclusive proof of negligence. The authorities are conflicting upon the question as to whether or not the act is negligence *per se* or merely evidence of negligence, but, as we say, the true rule seems to be that it is evidence of the negligence only, but that that evidence is conclusive when no explanation is given. In the case at bar there was no attempt at explanation, and we think the instruction could not have misled the jury.

This disposes of each of the questions raised by the appellant upon this appeal, except the general discussion upon a request of the defendant for an instruction to find for the defendant. This we think we have sufficiently discussed in passing upon the sufficiency of the evidence to justify the verdict. Considering the age of the deceased, and all the surrounding circumstances of the case, we think the verdict for $5,000 exceeds by $2,000 the amount which plaintiff is shown to be entitled to as damages in this case, and, unless the plaintiff will consent to reduce the judgment to the sum of $3,000, the judgment should be reversed. If such consent is given forthwith, then in that case the judgment is affirmed to the amount of $3,000 and costs, with interest from this date. We find no other error in the record.