[No. 4253.]

THE COLORADO MIDLAND RAILWAY COMPANY v. ROBBINS.

1.  **Negligence—Pleading—Instructions.**

In an action against a railway company, the complaint alleged that while plaintiff was riding along a public street in a

city the defendant negligently caused its train of cars to pass over the street at a reckless and dangerous rate of speed in violation of an ordinance of the city; that defendant's servants observed plaintiff's peril but carelessly failed to stop the train or to make any effort to slacken the speed; that by reason of the noise of the engine and cars and of the steam escaping from them caused by the negligent management and operation of the train, plaintiff's team became frightened and threw him upon defendant's track in front of the engine of the train, which ran over and hurt him. Held that the specific act of negligence pleaded as the proximate cause of the injury was the excessive speed at which defendant ran its train, in violation of the city ordinance, and that the other allegations of negligence were not an essential part of the cause of action, and an instruction that confined the attention of the jury to that specific allegation of negligence was not prejudicial to defendant.

2. **Negligence—Railroads—Excessive Speed—Proximate Cause.**

Where the evidence showed that defendant was running its train over the streets of a city at an excessive rate of speed and that plaintiff's team became frightened at the noise of the train and escaping steam, and threw plaintiff upon the track in front of the engine and it ran over him and plaintiff testified that if the train had not been running at a greater rate of speed than that allowed by the city ordinances he could have gotten out of its way, a finding by the jury that the running of the train at an excessive rate of speed in violation of the city ordinances was the direct and proximate cause of the injury will not be disturbed on the ground that the evidence does not sustain it.

3. **Evidence—Speed of Train—Competency of Witnesses.**

Where plaintiff's witnesses all testified that a train by which he was injured was running very fast and one who had been a locomotive fireman testified that it was running 18 or 20 miles an hour, and defendant's witnesses who were running the train testified that in their opinion it was not running over six miles an hour, which was the limit fixed by the city ordinance, a finding of the jury that the train was being run at an excessive rate of speed will not be disturbed because defendant's witnesses were more capable of judging of the speed of the train than were plaintiff's witnesses.

4. **Negligence—Railroads—Excessive Speed—City Ordinances—Instructions.**

In an action against a railroad company for an injury alleged to have been caused by defendant negligently running its

train over the streets of a city at an excessive rate of speed in violation of the city ordinances, where defendant offered no excuse or explanation for running at an excessive speed, but denied that the train was run at a speed in violation of the ordinance, an instruction that told the jury that if the ordinance of the city limiting the speed of trains was violated by defendant that of itself was negligence, instead of telling them that it was evidence of negligence, was not prejudicial error.

5. Negligence—Contributory Negligence—Evidence — Instructions.

In an action for personal injuries alleged to have been caused by defendant's negligence, an instruction that, to entitle the defendant to a verdict on the ground that plaintiff's own negligent act contributed to his injury, it was incumbent upon the defendant affirmatively to establish that fact from the evidence, unless such negligence appeared from the testimony of plaintiff himself, was not correct as an abstract proposition of law, since, if it should appear from any part of plaintiff's proof that his own negligence was the proximate cause of the injury he could not recover, but where the only evidence on behalf of plaintiff from which the jury could find plaintiff's negligence was his own testimony, the instruction was not prejudicial.

6. Negligence—Contributory Negligence—Evidence—Effort to Save Property.

In an action against a railroad company for personal injuries where plaintiff testified that when he saw the train coming he considered himself and his property in danger and immediately jumped from his wagon and made an effort to get his team back to a cross street, and that recognizing his peril he wanted to get himself and his team out of danger, the jury was justified in finding as a matter of fact that what plaintiff did was done for the purpose of saving himself from danger, and not solely for the purpose of saving his property.

7. Negligence—Contributory Negligence—Instructions—Sudden Danger.

Where plaintiff seeing a train approaching meeting him in a narrow street jumped from his wagon and attempted to turn his team back into a cross street and the evidence showed that if the train had not been running at a greater rate of speed than was permitted by the city ordinances plaintiff would have succeeded in extricating himself and team from danger, and in his efforts to save himself and team he was run over and injured, an instruction that if one uses bad judgment in the excitement of the moment of danger, this of itself does not prove

negligence, and in such cases plaintiff is only required to use ordinary care to prevent injury, was applicable to the facts of the case and was not erroneous.

*Appeal from the District Court of El Paso County.*

Action to recover damages for personal injuries on account of negligence of the defendant. Answer denying that defendant was negligent and averring contributory negligence of plaintiff. There was a judgment in plaintiff's favor for $3,000, to reverse which this appeal is prosecuted.

The complaint charges that while plaintiff was riding along Moreno avenue, a highway in the city of Colorado Springs, the defendant carelessly and negligently caused its train of cars to pass over and along the avenue within the limits of the city at a high, reckless and dangerous rate of speed—greatly in excess of that allowed by, and in violation of, an ordinance of the city which restricted the speed to six miles an hour—to wit, at the rate of twenty miles an hour. That defendant's servants observed plaintiff with his team on the avenue, and carelessly failed and omitted to stop the train, or to make any effort to slacken its speed or to get it under control; that by reason of the noise of the engine and cars, and the noise and confusion of the steam escaping from them, caused by the careless and negligent management and operation of the train, the team of plaintiff became greatly frightened and with violent and uncontrollable force threw him upon defendant's railroad track with great force in front of the engine of the train, which ran over and hurt him.

The material facts disclosed by the evidence are that plaintiff was driving two horses attached to a wagon, containing mineral water in bottles, along the south, or left hand, side of Moreno avenue in the city of Colorado Springs. He was going west, after nav-

ing passed Cascade avenue, which crossed Moreno avenue at a right angle, and had gone a distance of about thirty feet beyond the west line of Cascade avenue when he saw a train of defendant company coming toward him from a westerly direction. At this place in Moreno avenue there were three railroad tracks. The evidence clearly shows that it was not practicable for plaintiff to cross upon the right hand, or north side of these tracks, because of their location in the street at that place. The plaintiff's objective point was a grocery store on the southwest corner of Saguache street, one block west of Cascade avenue. When the plaintiff first saw the train it was distant about two and one-half blocks, or a quarter of a mile. South of the tracks was a driveway wide enough for wagons to pass, and immediately south of this driveway an irrigating ditch, and just beyond it the sidewalk. At once upon seeing the train, as the plaintiff testifies, he considered himself and property in danger, and immediately jumped from his wagon and caught the near horse by his bridle, and made an effort to get the team back to Cascade avenue, because, as he said, recognizing his peril he wanted to get himself and his team out of danger, which would be accomplished when he reached the intersection of the two avenues. In the process of turning he was carried around so that, when the team faced east, he was between the near horse and the railroad track, still holding the animal by some part of the harness or bridle, and was crowded over so close to the track that when the train came along he was struck by the pilot of the engine and fell between the cylinder and dead wood of the pilot, and thus received his injuries. When plaintiff jumped from the wagon he was about thirty feet west of the west line of Cascade avenue, and when struck by the locomotive was about ten feet therefrom, so that in turning with a

view to escape danger, he and the team had advanced eastward about twenty feet. The plaintiff testifies not only that he considered that he himself was in danger, but that, in the excitement of the moment and for the purpose of withdrawing himself from the exposed position, he thought he would be able to get his team to Cascade avenue before the train came along and thus escape injury, and he testifies that had the train been going not to exceed the rate of speed prescribed by ordinance, namely, six miles an hour, he would have been able to avoid the collision,

There was testimony in behalf of plaintiff by so-called non-expert witnesses as to the speed of the train, and by witnesses for the defendant who were accustomed to the handling of trains and familiar with their movements. One of plaintiff's witnesses, however, had been a fireman on a locomotive engine, and he testified that the train was running at from eighteen to twenty miles an hour, while witnesses for defendant said that in their opinion the train was not running at a rate of speed in excess of six miles an hour. Such other facts as are applicable to the questions discussed will be found in their appropriate place in the opinion.

Messrs. ROGERS, CUTHBERT & ELLIS, for appellant.

MR. JOHN SHEAFOR, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The principal errors relied upon in argument may thus be stated: (1) The court improperly submitted the case to the jury upon an issue not made by the pleadings or the proof; (2) the specific act of negligence upon the part of defendant which was submitted by the court to the jury was not the proxi-

mate or direct cause of the injuries sustained by the plaintiff, and it was accompanied by erroneous instructions of law; (3) the plaintiff was guilty of contributory negligence that defeats his recovery.

1. The court instructed the jury that the specific act of negligence charged against defendant was the running of its train in excess of the rate of speed prescribed by the ordinance of the city, and in considering defendant's negligence they were told that they must confine their attention to that specific act of negligence and no other. Whether this instruction was given at the request of defendant or plaintiff, or by the court of its own motion, does not clearly appear, but counsel for the railroad company say that this was not the act of negligence pleaded. They say that this specific act was only one of a series relied upon as constituting the cause of action, the others being the neglect to give signals of the approaching train, the failure to stop or to make any effort to slacken the speed of the train, or to get the same under control; and that the noise of the engine and cars, and the noise and confusion of the steam escaping from them, resulting from the careless management of the train, and not the excessive speed, caused the injury.

Defendant's contention, as we understand its counsel, is that the court should have instructed the jury that all these various acts of negligence or elements or component parts of the specific negligence charged, and the results from them, must be established by the evidence before a verdict for plaintiff could be returned. And since there was no proof whatever that any noises were made or any steam escaped, the cause of action as pleaded was not proved.

While the complaint is not drawn with that precision which might have been employed, we are of

opinion that the construction which defendant's counsel put upon it is not correct. The distinctions which they draw are too fine for practical purposes. A careful reading of the entire pleading satisfies us that the court was right in charging the jury that the specific act of negligence pleaded, as being the direct and proximate cause of the injury, was the excessive rate of speed which defendant employed in running its train. The others were but resultants or accompaniments of that act, or if separate acts of negligence, they cannot be said to be such an essential part of the cause of action pleaded as to defeat a recovery if not proven. Otherwise expressed, if the specific act of negligence as to speed relied upon was established by the evidence, and was the proximate cause of the injury, the plaintiff was entitled to recover though these other elements were not shown to exist. Whether the court declined to submit them upon the theory that they were not essential to the cause of action, or because the evidence did not require it, is immaterial, for the restriction of the plantiff to the one act of negligence worked no harm to defendant.

The point that the high rate of speed was not the proximate and direct cause of the injury we do not think is good. The fact that other intervening causes may have contributed to the injury—unless one or more of them were to stand as the cause of the misfortune—does not render the other, or the running of the train at an excessive rate of speed, too remote. That is to say, if the first or original negligent act of the defendant in running its train too fast set in motion a train of dependent or connected causes, all of which, in a measure, may have contributed to the misfortune, that primary act may still be treated as the proximate and direct cause of the injury.

Plaintiff testified that if the train had not been running in excess of eight miles an hour, he could have withdrawn himself from the place of danger.

The jury were in possession of all the facts bearing upon that question, and upon proper instructions applicable thereto found that the excessive rate of speed, which constituted a violation of the ordinance, was the direct cause of the injury. We are not disposed to disturb their verdict on account of the alleged lack of evidence to sustain it in this particular.—*Denver, etc. R. R. Co. v. Robbins*, 2 Colo., App., 313 (30 Pac. 26.)

2. The defendant says that plaintiff's case as to the vital issue of the speed of the train was not made out. One of plaintiff's witnesses, who had been a fireman on a locomotive, testified that at the time he saw the locomotive it was running between eighteen and twenty miles an hour, and he could not see that it had slowed down much at the time of the collision. Counsel say that because this witness was looking at the train as it was coming directly towards him, it was impossible for him in such circumstances with any degree of accuracy to determine the speed of any moving object, much less that of a railroad train. Counsel overlook the fact, however, that at the time the train was moving on a curve, so that it is not true, as they contend, that the witness was directly facing the locomotive. Other witnesses for plaintiff testified that the train was running very fast, and plaintiff himself said: "I jumped and grabbed my horses and it came on me that quick," but none of them except Rocheville specified the number of miles per hour. It may be that some, if not all, of the witnesses for defendant, being more familiar with the movement of trains, were more capable than plaintiff's witnesses of giving an intelligent opinion as to the speed at which this train was moving; but we cannot say that the jury should have ignored the testimony of plaintiff's witnesses, and believed that of his adversary. The matter was

fairly submitted to their consideration, and we do not feel at liberty to reverse the judgment because of the insufficiency of proof as to the excessive speed.

Among other instructions the court said, if the ordinance of the city limiting the speed of trains was violated by the defendant that of itself was negligence. The authorities are not entirely harmonious as to whether the running of a train at a rate of speed beyond that permitted by ordinance or statute is of itself negligence. By some, such violation is declared to be negligence *per se,* by others, only evidence of negligence. It may be that the better rule is that such violation is only evidence of negligence, but when the violation is wholly unexplained it may be conclusive evidence of negligence. In this case the defense was that the ordinance was not violated. There was no attempt at an explanation of, or an excuse for, an excessive speed; hence under either rule no prejudicial error was committed. Some of the authorities are: *Denver, etc., R. R. v. Ryan,* 17 Colo., 98, 100; 3 Elliott on Railroads, § 1095; *Riley v. Salt Lake Rapid Transit Co.,* 10 Utah, 428; *Bott v. Pratt,* 8 Am. & Eng. Corp. Cases, 437; *Denver, etc., R. R. Co. v. Robbins, supra.*

3. We think that the question as to the contributory negligence of the plaintiff was submitted under appropriate instructions, and that the jury did not make a mistake in their finding that, in the circumstances, plaintiff was free from fault. This brings us to certain instructions of which complaint is made.

The court instructed the jury that, to entitle the defendant to a verdict upon the ground that the plaintiff's own negligent act contributed to his injury, it was incumbent upon the defendant affirmatively to establish that fact from the evidence, unless such negligence appeared from the testimony of *plaintiff him-*

*self.* Defendant's counsel say that this was erroneous, because if such contributory negligence appeared from the testimony of any of plaintiff's witnesses, or from any evidence produced by him, he was not entitled to recover. As an abstract proposition of law, the instruction was not right, for it is true, as defendant contends, if it should appear from any part of the proof offered in behalf of a plaintiff that his own negligent act was a proximate or direct cause of the injury, he is not entitled to recover. But the error was without prejudice here, for a careful examination of all the evidence produced in behalf of the plaintiff shows that there is no evidence whatever of any negligent act upon his part unless his own testimony disclosed it and as to that the instruction was proper. So that, if there was any evidence of such a negligent act upon the part of plaintiff, it appeared from his own testimony, and not from any of his witnesses.

The court instructed the jury as favorably as defendant could ask to the effect that if they found that plaintiff was injured in an endeavor to save his property, or to remove it to a place of safety, their verdict must be for the defendant. This is a general statement of the rule, although there are some authorities, as shown in § 44 of Beach on Contributory Negligence (3d ed.), which hold that when such risks are assumed, even to save property from destruction, allowance may be made for the excitement under which one acts in such transactions, and running into danger may not, in such case, in virtue of all considerations, bar recovery. But this is not material here for the reason that plaintiff is not complaining of the instruction which was given, and defendant, of course, was satisfied with it. But defendant strenuously contends that the evidence shows that plaintiff's object when he jumped from the wagon and at-

tempted to turn his horses to the eastward and bring them back to Cascade avenue was solely for their protection, and not for the purpose of withdrawing himself from a dangerous place. Plaintiff does say that he thought his property was in danger, yet he also says that he considered that he himself was in a dangerous place, and that what he did was for the purpose of extricating himself from peril. So that, upon the question of fact, if the jury should find as in effect instructed by the court that the plaintiff's object was to save himself, the evidence was sufficient to sustain their finding.

In this connection the court said to the jury that if one uses bad judgment in the excitment of the moment of danger, this of itself does not prove negligence, and in such cases plaintiff is only required to use ordinary care to prevent injury. Defendant's criticism of this instruction is that it applies only when the peril has been brought on by the negligence of a defendant, and is wholly inapplicable where a plaintiff voluntarily places himself in a position of danger for the protection of his property. As already intimated, there was sufficient evidence in this case to make the instruction applicable. Let us consider for a moment the situation in which plaintiff was placed. He was driving his team along a public highway where he had a right to be. He was supposed to know that the ordinance of the city restricted railroads in running their trains to six miles an hour. He had a right to presume that the train which he saw approaching was not exceeding that limit. He testifies that had the ordinance been observed he would have been able to take himself and team out of the dangerous place. It is too clear for argument that he was in a dangerous place on the highway when he saw the train approaching, and it was but an act of ordinary prudence, as we think, for him in the circum-

stances of the case to do as he did. He might well have concluded that to extricate himself from the threatened peril it was safer to jump from the wagon and turn his horses than to undertake to remain in the wagon with the train bearing down upon him. There was enough in the evidence to warrant the court in giving this charge, and though defendant did not know when he alighted from the wagon that the train was running at a speed of eighteen or twenty miles an hour, this fact, if it was shown, may have been, and the jury were justified in finding that it was, the negligent act on the part of defendant that placed plaintiff in a perilous situation; hence it cannot be said that plaintiff voluntarily exposed himself to danger to save his property. On the contrary, the jury might well find that defendant's antecedent negligent act led plaintiff to act as he did. At all events, the question as to whether the course adopted by him to avoid the danger was such as a man of ordinary prudence would have chosen was peculiarly a question for the jury, and since they were given clear and explicit instructions as to the law of the case, their finding cannot be disturbed.

*Allen v. F. & C. C. Ry. Co.*, 15 Colo. App., 213, 1 Colo. Dec., 765, is in some of its features quite in point here under the facts of the case at bar. The record discloses that in its rulings upon evidence and instructions the court, to say the least, went as far in favor of defendant as it could ask. Perceiving no prejudicial error, the judgment must be affirmed.

*Affirmed.*